**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KENNY LESLIE, | ) | |
| | ) | |
| Petitioner, | ) | No. 15 C 02395 |
| | ) | Hon. Marvin E. Aspen |
| v. | ) | |
| | ) | |
| KESS ROBERSON, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Presently before us Petitioner Kenny Leslie's pro se application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 to vacate, set aside, or correct his conviction. For the reasons set forth below, we deny Petitioner's request for habeas relief.

### BACKGROUND

**I.      Petitioner's Trial and Conviction**

On November 3, 2009, Chicago police officers Susan Lascola and Sofia Gonzalez stopped a vehicle they believed was involved in two "hit and run" incidents.[1] *People v. Leslie*, 2013 IL App (1st) 111798–U, ¶ 6 (Dec. 13, 2013). Petitioner was in the front passenger seat of

---

[1] We presume the State courts' factual determinations to be correct, and Petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e).

the car.  *Id.*  The driver was arrested for fleeing the scene of an accident and for driving under the

influence of alcohol.  *Id.* ¶ 8.  Officer Lascola informed Petitioner that he was not under arrest,

but that the car would have to be towed and impounded.  *Id.*  Petitioner told officers that he was

quadriplegic.  *Id.*  Officers Fernando Rodriguez and Marco Proano then tried to assist Officer

Lascola in removing Petitioner from the car.  *Id.* ¶ 9.  Petitioner indicated that his back hurt and

that he could not exit the car.  *Id.*  In response, the officers called the fire department to assess

Petitioner for injuries and help him exit the car.  *Id.*  When Officer Rodriguez asked Petitioner to

exit the car, Petitioner responded "'[Expletive omitted] you both, Mexicans.  I'm going to get my

gun and kill you when I get out."  *Id.*

       Shortly after fire department personnel arrived, Petitioner exited the car without

assistance.  *Id.* ¶ 10.  At that point, Officer Rodriguez handcuffed and arrested Petitioner for

aggravated assault to a police officer, based on his threat to get a gun and kill Officers Rodriguez

and Proano.  *Id.*  Officer Rodriguez then led Petitioner to his squad car, where Petitioner

proceeded to sit in the back seat with his legs deliberately positioned outside the squad car in a

way that prevented Officer Rodriguez from shutting the door.  *Id.* ¶ 11.  After Petitioner

continued to defy Officer Rodriguez's orders to place his legs in the car, Officer Rodriguez

picked up Petitioner's legs and repositioned them inside the squad car.  *Id.*  When Officer

Rodriguez attempted to close the door, Petitioner kicked him in the jaw.  *Id.*  Officer Rodriquez

was eventually able to close the door, and the officers transported Petitioner to the police station.

*Id.* ¶¶ 11–12.  Petitioner was taken to a holding cell where, for safety reasons, he was required to

remove his shoelaces.  *Id.*  Petitioner refused to remove his shoelaces, and when Officer

Rodriguez attempted to remove Petitioner's shoelaces, Petitioner bit him on the wrist.

*Id.* ¶¶ 12–13.

At trial, Petitioner denied kicking Officer Rodriquez or threatening to kill any officers. *Id.* ¶ 18. Instead, Petitioner testified that he requested help exiting the car prior to his arrest, but the officers responded by using excessive physical force to remove him from the vehicle. *Id.* Petitioner further testified that he repeatedly requested to go to the hospital and, after arguing with the officers, Officer Rodriguez put him in a choke hold for 30 to 40 seconds. *Id.* Petitioner testified that, because he could not breathe, he bit Officer Rodriguez. *Id.* An intake paramedic from Cook County jail testified that he examined Petitioner on the evening of the arrest and Petitioner "denied any recent trauma and did not say that he had been assaulted by a police officer." *Id.* ¶ 16. Petitioner was charged with two counts of aggravated battery to a peace officer. *Id.* ¶ 6. After he was charged, Petitioner filed a civil lawsuit based on the circumstances of his arrest. *Id.* ¶ 15. On March 14, 2011, a jury found Petitioner guilty of one count of aggravated battery of a peace officer. *Id.* ¶ 20. Petitioner was acquitted of the charge "premised on insulting or provoking contact." *Id.* The trial court sentenced Petitioner to twenty years in prison. *Id.*

## II.    Direct Appeal

On June 1, 2011, Petitioner filed a direct appeal to the Illinois Appellate Court. (Direct Appeal Br., St. Ct. R., Ex. B (Dkt. No. 19–1) at Pg. ID#: 218.) In that appeal, Petitioner raised four claims: (1) his trial counsel was ineffective for failing to request jury instructions on two available lesser-included offenses; (2) the trial court violated his confrontation right by limiting defense counsel's cross-examination of arresting officers Rodriguez and Proano regarding Petitioner's civil lawsuit against the officers; (3) the admission of other crimes evidence without a limiting instruction was reversible error; and (4) the prosecutor's closing argument contending that an acquittal would empower Petitioner to commit future offenses was improper and violated

Petitioner's due process right to a fair trial.  (*Id.* at Pg. ID#: 173.)  On December 13, 2013, the

Illinois Appellate Court affirmed Petitioner's conviction, holding he failed to establish any errors

in his trial court proceedings.  *Leslie*, 2013 IL App (1st) 111798–U.  Petitioner renewed these

claims in his Petition for Leave to Appeal ("PLA"), which the Illinois Supreme Court summarily

denied on March 26, 2014.  (Direct Appeal PLA, St. Ct. R., Ex. E, (Dkt. No. 19–2)

at Pg. ID#: 79.)

### III.     Post-Conviction Proceedings

On August 19, 2011, while his direct appeal was still pending, Petitioner filed a pro se

post-conviction petition.  (Post-conviction Pet., St. Ct. R., Ex. P (Dkt. No. 19–10).)  In this

petition, Petitioner raised three distinct claims: (1) that the trial court erred when it denied his

motion to suppress evidence in which he argued he was unlawfully arrested and could not have

committed assault because he did not have a weapon or firearm and the officers were never

hospitalized; (2) the State knowingly relied on the perjured testimony of Officers Lascola,

Rodriguez, Proano, and Willis to secure Petitioner's conviction, violating his constitutional right

to due process; and (3) the State violated *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963)

because it withheld allegedly exculpatory footage from police surveillance cameras.

(*Id.* at Pg. ID#: 1431–35.)

On November 16, 2011, the trial court dismissed the petition, finding that Petitioner's

claims lacked merit.  (*Id.* at Pg. ID#: 1435.)  Specifically, the trial court found

that (1) Petitioner's claim that no assault occurred because he never possessed a weapon and the

police officers were not hospitalized was without merit, as "the State was never required to prove

that a weapon or firearm was involved or that the officers were hospitalized"; (2) Petitioner

failed to produce any evidence which might substantiate his allegation that Officers Lascola,

4

Rodriguez, Proano, and Willis gave perjured testimony; and (3) Petitioner failed to present any facts supporting his *Brady* claim.  (*Id.* at Pg. ID#: 1432–35.)  Petitioner appealed the trial court's dismissal of his petition for post-conviction relief, and the Illinois Appellate Court summarily affirmed.  (Post-conviction Appeal Order, St. Ct. R., Ex. F (Dkt. No.19–3) at Pg. ID#: 359–60.)  Petitioner sought rehearing on his petition for post-conviction relief, which the Illinois Appellate Court summarily denied on April 30, 2013.  (Rehearing Order, St. Ct. R., Ex. I (Dkt. No. 19–4) at Pg. ID#: 435.)  Petitioner filed a petition for leave to appeal the appellate court's dismissal to the Supreme Court of Illinois, reiterating his claims of unlawful arrest, prosecutorial misconduct, and perjury.  (Post-conviction PLA, St. Ct. R., Ex. J (Dkt. No. 19–4) at Pg. ID#: 447–51.)  The Illinois Supreme Court denied his PLA on September 9, 2013.  (*Id.* at Pg. ID#: 452.)

On February 10, 2014, Petitioner sought leave with the trial court to file a successive petition for post-conviction relief.  (Successive Post-conviction Pet., St. Ct. R., Ex. Q (Dkt. No. 19–11) at Pg. ID#: 1470.)  Petitioner argued that his appellate counsel was ineffective for failing to raise the following issues on appeal:

> (1) prosecutorial misconduct for presenting false evidence and argument concerning Officer Rodriguez's bite wound and eliciting false testimony from Officers Lascola, Rodriguez and Willis concerning details of petitioner's arrest, and (2) ineffective assistance of trial counsel for failing to challenge the introduction of false evidence concerning Officer Rodriguez's bite wound and failing to object to misstatements of evidence by the prosecutor in opening and closing statements.

(*Id.* at Pg. ID#: 1521.)  Petitioner attached to his petition additional documents he claimed proved the witnesses perjured themselves during his trial.  (*Id.* at Pg. ID#: 1526.)  On April 14, 2014 the trial court denied Petitioner leave to file a successive post-conviction petition, finding that Petitioner failed to show cause for his failure to produce the additional documents or raise his additional claims in his initial petition for post-conviction relief.  (*Id.*)  The trial court further found that, even if Petitioner had shown cause, Petitioner could no show prejudice as

there was no reasonable likelihood that the outcome of his trial would have been different if the witnesses had been impeached with the new documents which allegedly contradicted their testimony. (*Id.* at Pg. ID#: 1526–27.) Petitioner appealed, and on December 23, 2015 the Illinois Appellate Court summarily affirmed the trial court's denial of leave to file a successive petition for post-conviction relief. (St. Ct. R., Ex. K (Dkt. No. 19–4) at Pg. ID#: 453–56.) Petitioner filed a pro se PLA, which the Illinois Supreme Court denied on May 25, 2016. (St. Ct. R., Ex. N (Dkt. No. 19–4) at Pg. ID#: 556.)

**IV.     Federal Habeas Petition**

On March 23, 2015, Petitioner filed a pro se federal habeas petition, asserting the following six claims: (1) Petitioner's conviction, obtained using knowingly false testimony from Officers Lascola, Rodriguez, Proano, and Willis, violated Petitioner's Fourteenth Amendment right to due process; (2) Petitioner was denied his Sixth Amendment confrontation rights when the trial court limited his cross-examination of Officers Proano and Rodriguez; (3) the State relied on false evidence; (4) the State withheld exculpatory evidence; (5) the State's rebuttal closing argument was improper; and (6) Petitioner's trial counsel was ineffective for failing to object to the State's presentation of false testimony and for failing to impeach Officers Lascola, Rodriguez, and Willis. (Dkt. No. 5 at Pg. ID#: 13–18.) On June 29, 2015, we granted Petitioner's motion to stay his case while he exhausted his state remedies on several claims. (Dkt. No. 11.) Petitioner now states that he has fully exhausted all state court remedies available by presenting each of his habeas claims through one complete round of state appellate review. (Dkt. No. 13.)

# ANALYSIS

## I.   PROCEDURAL DEFAULT

For us to review a claim for a writ of habeas corpus on the merits, the petitioner must exhaust state court remedies and avoid procedural default.  28 U.S.C. § 2254(b)(1); *see also Perruquet v. Briley*, 390 F.3d 505, 513–15 (7th Cir. 2004)).  "Where state remedies remain available to a habeas petitioner who has not fairly presented his constitutional claim to the state courts, the exhaustion doctrine precludes a federal court from granting him relief on that claim." *Perruquet*, 390 F.3d at 514.  "If the claim comes from the Illinois state courts, the petitioner must have presented each claim in the habeas petition to the Illinois Appellate Court and to the Illinois Supreme Court in a petition for discretionary review."[2] *Mulero v. Thompson*, 668 F.3d 529, 536 (7th Cir. 2012) (internal citation and quotation marks omitted).  Procedural default is a "separate but related doctrine" that precludes federal courts from ruling on the merits of a habeas claim when "(1) that claim was presented to the state courts and the state-court ruling against the petitioner rests on adequate and independent state-law grounds, or (2) the claim was not presented to the state courts and it is clear that those courts would now hold the claim procedurally barred."  *Perruquet*, 390 F.3d at 514; *see also Lee v. Foster*, 750 F.3d 687, 693 (7th Cir. 2014) (holding that a claim is procedurally defaulted "if the last state court that rendered judgment 'clearly and expressly states that its judgment rests on a state procedural bar'" (quoting *Harris v. Reed*, 489 U.S. 255, 263, 109 S. Ct. 1038, 1043 (1989)).

A claim is fairly presented when "the state court was sufficiently alerted to the federal constitutional nature of the issue to permit it to resolve that issue on a federal basis."

---

[2] In Illinois, a petitioner may present a claim "either on direct appeal or in post-conviction proceedings."  *McDowell v. Lemke*, 737 F.3d 476, 482 (7th Cir. 2013) (citing *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004)).

*Ellsworth v. Levenhagen*, 248 F.3d 634, 639 (7th Cir. 2001). Typically, this requires that the petitioner present "[b]oth the operative facts and controlling law" to the state court. *Id.* However, in reviewing whether a petitioner's claims are procedurally defaulted, federal courts should "avoid hypertechnicality." *Verdin v. O'Leary*, 972 F.2d 1467, 1474 (7th Cir. 1992). A petitioner's may claim may have some "variations in the legal theory or factual allegations urged in its support," so long as the substance of his argument remains the same. *Picard v. Connor*, 404 U.S. 270, 277–78, 92 S. Ct. 509, 513 (1971).

### A. Perjured Testimony (Claim 1)

Respondent argues Petitioner's claim that the State knowingly used the perjured trial testimony of Officers Lascola, Rodriguez, Willis, and Proano to secure his conviction, thus violating his Fourteenth Amendment Due Process rights, is procedurally defaulted. (Resp. (Dkt. No. 18.) at 8–12.) Specifically, Respondent argues Petitioner's habeas claim that Officers Proano and Willis committed perjury is procedurally defaulted, as his petition for post-conviction relief contained only a "bare allegation that Officers Proano and Willis committed perjury" and thus "did not fairly present" his claim to the state court. (*Id.* at 11.)

In his first petition for post-conviction relief, Petitioner argued that the State knowingly relied on Officers Lascola, Rodriguez, Willis, and Proano's false testimony to secure his conviction. (Post-conviction Pet. at Pg. ID#: 1403–1406.) The trial court dismissed his claim as "nothing more than a bald conclusion," finding that he "provided no supporting documentation at all" such that he "failed to substantiate his allegation that Officers Lascola, Rodriguez, Willis, and Proano gave perjured testimony." (*Id.* at Pg. ID#: 1434.) The Illinois Appellate Court summarily affirmed the trial court's dismissal, finding that "an appeal in this cause would be without arguable merit." (Post-conviction Appeal Order at Pg. ID#: 360.) Finally, Petitioner

filed a PLA with the Illinois Supreme Court, raising the same claims again, but the court summarily denied his request for discretionary review. (Post-conviction PLA at Pg. ID#: 452.)

Petitioner's first petition for post-conviction relief fairly presented his constitutional claim to the trial court, which explicitly recognized the constitutional nature of Petitioner's claim. (Post-conviction Pet. at Pg. ID#: 1433–34 ("It is axiomatic that a conviction based upon false testimony offends notions of fundamental fairness." (citation omitted)).) The trial court dismissed his claim on the merits, finding it was "nothing more than a bald conclusion." (*Id.* at Pg. ID#: 1434.) *Rice v. Bowen*, 264 F.3d 698, 702 (7th Cir. 2001) (recognizing that "Illinois has directed its courts summarily to dismiss frivolous or patently meritless post-conviction petitions," and that dismissing a post-conviction petition as frivolous "is a merits determination"). The reviewing appellate courts did not rely on a state procedural ground when affirming the trial court's dismissal or for denying Petitioner's PLA. (Direct Appeal Order at Pg. ID#: 360; PLA at Pg. ID#: 452.) To be sure, Petitioner's present habeas claim presents somewhat different facts than he presented to the state trial court in his petitioner for post-conviction relief, including more detailed factual allegations. (*see* Post-conviction Pet. at Pg. ID#: 1404–1406; Dkt. No. 5 at Pg. ID#: 13–15.) Despite variations in the facts Petitioner alleges in support of his claim, "the "ultimate question for disposition . . . [is] the same"—that is, whether the State knowingly relied on perjured testimony of the officers in order to secure Petitioner's conviction. *Picard v. Connor*, 404 U.S. 270, 277, 92 S. Ct. 509, 513 (1971). Petitioner has therefore not procedurally defaulted on his first claim.

## B. False Evidence (Claim 3)

In his third claim, Petitioner argues the State knowingly introduced, or failed to correct, false evidence that he broke Officer Rodriguez's skin when biting him, which violated his right

to due process under the Fourteenth Amendment.[3]  (Dkt. No. 5 at Pg. ID#: 5.)  Respondent

argues that this claim is procedurally defaulted because Petitioner did not raise his third claim

until his request for leave to file a successive post-conviction petition, which was denied on

procedural grounds.  (Resp. at 18.)

As Respondent observes, Petitioner did not raise his claim that the State introduced false

evidence until his successive post-conviction petition, in which he argued his appellate counsel

was ineffective for failing to raise the issue on appeal.  (Successive Post-conviction Pet.

at Pg. ID#: 1470–72.)  In Illinois, a petitioner may file only one petition for post-conviction relief

without the court's leave. 725 ILCS 5/122–1(f).  A court may grant a petitioner leave to file a

successive post-conviction petition including claims not presented in the initial petition only if

the petitioner "demonstrates cause for his or her failure to bring the claim[s] in his or her initial

post-conviction proceedings and prejudice results from that failure."  725 ILCS 5/122–1(f).  In

considering Petitioner's successive post-conviction petition, the trial court observed that

Petitioner did not "so much as mention the cause and prejudice test anywhere in his petition."

(Successive Post-conviction Pet. at Pg. ID#: 1525.)  The trial court found that "the only evidence

petitioner submits other than trial transcripts . . . are (1) excerpts from the transcripts of civil

depositions in petitioner's civil suit arising out of this matter, . . . and (2) statements of some of

the officers to the Independent Police Review Authority ('IPRA')."  (*Id.* at Pg. ID#:1525–26.)

The court further observed that there was nothing to suggest that Petitioner "could not have

obtained these documents and included them with his prior petition."  (Successive Post-

conviction Pet. at Pg. ID#: 1526.)  The court therefore denied the petition because Petitioner did

---

[3] Petitioner states the false evidence was "People's No. 6," but does not say what the form or
content of that exhibit was.  (Dkt. No. 5 at 5.)  However, the trial transcript indicates "People's
No. 6" is a photograph of blood on Officer Rodriguez's shirt cuff.  (Trial Tr., St. Ct. R., Ex. O
(Dkt. No. 19–6) at Pg. ID#: 718.)

"not meet the cause prong of the cause and prejudice test with respect to the claims he raises in the instant petition." (*Id.*) The appellate court summarily affirmed, and the Illinois Supreme Court summarily denied Petitioner's PLA. (St. Ct. R., Ex. K at Pg. ID#: 453–56; St. Ct. R., Ex. N at Pg. ID#: 556.) Accordingly, the state court's ruling rests on an adequate and independent state law ground such that Petitioner's claim is procedurally defaulted.[4] *Thomas v. Pfister*, 7 C 6643, 2014 WL 2777262, at *7 (N.D. Ill. June 17, 2014) (finding denial of a successive post-conviction petition for failure to show cause pursuant to 725 ILCS 5/122–(f) is "an independent and adequate state law" ground such that the "claim is likewise procedurally defaulted on federal habeas review"); *see also Watson v. Pfister*, No. 13 C 2276, 2015 WL 1186795, at *5 (N.D. Ill. March 11, 2015) (collecting cases) ("Several courts in this District have denied habeas petitions as procedurally barred when the state courts relied on § 5–122–1(f) to deny the successive post-conviction petition.").

### C. Withholding Exculpatory Evidence (Claim 4)

Petitioner contends that the State violated his Fourteenth Amendment due process rights, as set forth in *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963), by knowingly withholding exculpatory evidence. (Dkt. No. 5 at Pg. ID# 16–17.) Petitioner argues that the prosecution withheld evidence that blood found on Officer Rodriguez's shirt cuff was in fact Petitioner's and helped refute evidence that bit Officer Rodriguez. (*Id.*) Petitioner further argues that the

---

[4] The court also found, in the alternative, that Petitioner's successive post-conviction petition lacked merit and did not establish prejudice. (Post-conviction Pet. at Pg. ID#: 1526–28.) However, "if the state's decision rests on both a procedural default and a lack of merit, then federal review is closed." *Rivas v. Sternes*, No. 3 C 2164, 2004 WL 407003, at *3 (N.D. Ill. Feb. 24, 2004) (citing *Brooks v. Walls*, 279 F.3d 518, 521 (7th Cir. 2002)); *see also Harris*, 489 U.S. at 265 n.10, 109 S. Ct. at 1044 ("Moreover, a state court need not fear reaching the merits of a federal claim in an *alternative* holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment." (emphasis in original)).

prosecution withheld evidence from police cameras placed at the intersection where he was arrested and at the police station. (Dkt. No. 13 at Pg. ID#: 60–61.)

Respondent argues this *Brady* claim is procedurally defaulted insofar as it concerns the blood found on Officer Rodriguez's shirt cuff, as Plaintiff did not raise that claim in the state courts. (Resp. at 19–20.) Petitioner's initial post-conviction petition stated a *Brady* claim, but that claim concerned only the allegedly suppressed video camera evidence. (Post-conviction Pet. at Pg. ID#: 1406.) Neither Petitioner's direct appeal nor his successive post-conviction petition stated a *Brady* claim.[5] (Pet'r Direct Appeal Br. at Pg. ID#: 173; Successive Post-conviction Pet. at Pg. ID#: 1470–1479.) "Under Illinois law, '[a]ny claim of substantial denial of constitutional rights not raised in the original or amended [post-conviction] petition is waived.'" *Woods v. Schwartz*, 589 F.3d 368, 376 (7th Cir. 2009) (first alteration in original) (quoting 725 ILCS 5/122–3). Petitioner's *Brady* claim concerning the blood on Officer Rodriguez's shirt cuff is therefore procedurally defaulted, as it is clear the Illinois courts "would now hold the claim procedurally barred." *Perruquet*, 390 F.3d at 514.

**D. Improper Closing Argument (Claim 5)**

Petitioner also argues his "due process right to a fair trial" under the Fourteenth Amendment was violated "when the prosecutor contended that an acquittal would empower petitioner to commit future offenses, and relied on a medical inference unsupported by any trial evidence." (Dkt. No. 5 at Pg. ID#: 17.) Respondent argues this claim is procedurally defaulted,

---

[5] Petitioner's PLA concerning the denial of his successive post-conviction motion argued the State violated *Brady* by failing to conduct any tests on the blood on Officer Rodriguez's sleeve, and "[s]ince it was not Rodriguez's blood, it should have been disclosed to the defense." (Ex. N at Pg. ID#: 545.) However, "raising a claim for the first time in a PLA does not constitute proper exhaustion." *Payton v. Pfister*, No. 11 C 6610, 2015 WL 5829749, at *15 n.6 (N.D. Ill. Oct. 1, 2015) (citing *Castille v. Peoples*, 489 U.S. 346, 351, 109 S. Ct. 1056, 1060 (1989)).

because it "was deemed forfeited on direct appeal, where the state appellate court held that petitioner forfeited the claim by failing to adequately preserve it for review in his post-trial motion." (Resp. at 21.)

On direct appeal, the Illinois Appellate Court observed that Petitioner objected at trial to the prosecutor's closing statements implying that Petitioner might commit future crimes if acquitted, and again objected to the closing statements in a post-trial motion. *Leslie*, 2013 IL App (1st) 111798–U, ¶ 69. The court found, however, that Petitioner's objections were too broad, using only "boilerplate language" that was "too general and not sufficiently specific to preserve an alleged error for review." *Id.* The court therefore held that Petitioner had waived his argument that the prosecutor's closing statements were improper and violated his due process rights.[6] *Id.* Petitioner's claim is therefore procedurally defaulted insofar as it concerns the prosecution's statements implying Petitioner might commit future crimes if acquitted, as the state court's ruling rests on adequate and independent state grounds. *Perruquet*, 390 F.3d at 514.

Petitioner's claim that the prosecution's closing argument was improper because it "relied on a medical inference unsupported by any trial evidence" is also procedurally defaulted. (Dkt. No. 5 at Pg. ID#: 17.) At trial, Petitioner testified that Officer Rodriguez had choked him at the police state for 30 to 40 seconds, and Petitioner bit him because he could not breathe. *Leslie*, 2013 IL App (1st) 111798–U, ¶ 18. In closing, the prosecutor challenged Petitioner's testimony, stating that "defendant would have passed out in 10 seconds if Officer Rodriguez had actually choked him." *Id.* ¶ 71. Petitioner waived his claim by failing to object to the prosecutor's statement at trial, and so the appellate court reviewed the issue under the plain error

_____

[6] The court held, in the alternative, that Petitioner's claim lacked merit. However, the state court's decision on procedural grounds precludes our review. *See Harris*, 489 U.S. at 265 n.10, 109 S. Ct. at 1044.

doctrine. *Id.* "[A]n Illinois court does not reach the merits of a claim simply by reviewing it for clear error." *Miranda v. Leibach*, 394 F.3d 984, 992 (7th Cir. 2005). While the appellate court's determination of whether the prosecutor's statement was plain error required some consideration of the merits, "that limited review is at most entangled with the merits and not entirely dependent on the merits." *Rodriguez v. McAdory*, 318 F.3d 733, 736 (7th Cir. 2003) (internal quotation marks and citation omitted). The state appellate court's decision thus rested on an independent and adequate state ground, and Petitioner's claim is procedurally defaulted. *See Sturgeon v. Chandler*, 552 F.3d 604, 611 (7th Cir. 2009) ("A finding of waiver by the state post-conviction court is enough to establish an adequate and independent state ground." (citation omitted)).

### E. Ineffective Assistance of Counsel (Claim 6)

Petitioner contends that trial counsel was ineffective for failing to object to the introduction of false evidence and for failing in several instances to adequately impeach or otherwise question witnesses at trial. (Dkt. No. 5 at Pg. ID#: 17–18.) Petitioner raised an ineffective assistance of counsel claim on direct appeal, but that claim concerned only trial counsel's failure to request jury instructions on less-included offenses. (Direct Appeal Br. at Pg. ID#: 173.) Petitioner also argued in his successive post-conviction petition that appellate counsel was ineffective for failing on direct appeal to raise ineffective assistance of trial counsel based on counsel's failure to object to the introduction of false evidence and for failing to adequately impeach or otherwise question witnesses at trial. (Successive Post-conviction Pet. at Pg. ID#: 1470–1479.)

First, the ineffective assistance of counsel claim Petitioner raised on direct appeal is sufficiently different than his current claim, such that his exhaustion of his claims on direct

appeal does not mean that the state courts had a meaningful opportunity to review his current ineffective assistance of counsel claim. "Fair presentment . . . does not require a hypertechnical congruence between the claims made in the federal and state courts; it merely requires that the factual and legal substance remain the same." *Anderson v. Benik*, 471 F.3d 811, 814–15 (7th Cir. 2006) (citation omitted). However, "a petitioner's reformulation of his claim should not place the claim in a significantly different legal posture by making the claim stronger or more substantial." *Boyko v. Parke*, 259 F.3d 781, 788 (7th Cir. 2001). Petitioner's current ineffective assistance of counsel claim is based on wholly different facts and a different legal theory than the claim he raised on direct appeal. Petitioner therefore did not give the state courts a meaningful opportunity to review his present ineffective assistance of counsel claim on direct review. *Johnson v. Hulett*, 574 F.3d 428, 432 (7th Cir.2009) ("[Petitioner] cannot argue one theory to the state courts and another theory, based on different facts, to the federal court." (citation omitted)).

Second, Petitioner failed to fairly present his current ineffective assistance of counsel claim in his post-conviction proceedings. Petitioner's successive post-conviction petition included an argument appellate counsel was ineffective for failing on direct appeal to raise ineffective assistance of trial counsel based on counsel's failure to object to the introduction of false evidence and for failing to adequately impeach or otherwise question witnesses at trial. (Successive Post-conviction Pet. at Pg. ID#: 1470–1479.) As discussed above, the state court denied Petitioner's successive petition for post-conviction relief on procedural grounds, and so the claims raised in the petition,, including his ineffective assistance of counsel claim, are procedurally defaulted. *Lee*, 750 F.3d at 693.

## II.   MERITS

When reviewing a habeas petition, we are "limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 68, 112 S. Ct. 475, 480 (1991).  Our review is "circumscribed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")," 28 U.S.C. § 2254.  *Atkins v. Zenk*, 667 F.3d 939, 943 (7th Cir. 2012).  Under AEDPA, we may grant an application for a writ of habeas corpus only if the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 363, 404–405, 120 S. Ct. 1495, 1519 (2000); *Morgan v. Hardy*, 662 F.3d 790, 797 (7th Cir. 2011).  We presume the State courts' factual determinations to be correct, and Petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e).

"A decision is contrary to clearly established federal law if it either applies a rule that contradicts a prior Supreme Court case, or if it reaches a different result than the Supreme Court has reached on a materially indistinguishable set of facts."  *Hall v. Zenk*, 692 F.3d 793, 798 (7th Cir. 2012).  A state court's decision is an "unreasonable application" of clearly established federal law if it "identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."  *Williams*, 529 U.S. at 408–09, 120 S. Ct. at 1520.   A state court's decision may also be an "unreasonable application" of clearly established federal law if it "unreasonably extended a rule to a context where it should not have applied or unreasonable refused to extend a

rule to a context where it should have applied." *Morgan*, 662 F.3d at 797. A decision is not an "unreasonable application" of clearly established federal law merely because it is "incorrect from the point of view of the federal court." *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002) (citing *Williams*, 529 U.S. at 407–08, 120 S. Ct. at 1521). Rather, an unreasonable decision lies "well outside the boundaries of permissible differences of opinion." *Id.* (citing *Williams*, 529 U.S. at 411, 120 S. Ct. at 1522).

### A. Perjured Testimony (Claim 1)

As discussed above, Petitioner argues the State knowingly relied on the perjured trial testimony of Officers Lascola, Rodriguez, Willis, and Proano to secure his conviction, in violation of his Fourteenth Amendment due process rights. (Dkt. No. 5 at 2.) "[A] conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Bagley*, 473 U.S. 667, 678–79, 105 S. Ct. 3375, 3381–82 (1985) (internal quotation marks and citation omitted); *Napue v. Illinois*, 360 U.S. 264, 269, 79 S. Ct. 1173, 1177 (1959) ("[I]t is established that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment." (citation omitted)). A new trial is required if Petitioner established: "(1) the prosecution presented false testimony or failed to disclose that false testimony was used to convict, (2) the prosecution knew or should have known that the testimony was flase, and (3) there is a reasonable likelihood that the testimony could have affected the judgment of the jury." *Griffin v. Pierce*, 622 F.3d 831, 842 (7th Cir. 2010) (citing *United States v. Agurs*, 427 U.S. 97, 103, 96 S. Ct. 2392, 2397 (1976)).

The state court found that Petitioner failed to produce any support for his claim that the officers gave perjured testimony, which it dismissed as "nothing more than a bald conclusion." (Post-conviction Pet. at Pg. ID#: 1434.)  While Petitioner's present petition contains more factual allegations than his initial post-conviction petition, he supports those additional allegations primarily with references to arrest reports and IPRA reports that he failed to present to the state court that dismissed his post-conviction petition.  (Dkt. No. 5 at 2–4.)  Our review is "limited to the record that was before the state court that adjudicated the claim on the merits," and we decline to consider any documents that were not before the state court.  *Cullen v. Pinholster*, 563 U.S. 170, 182, 131 S. Ct. 1388, 1398 (2011) (interpreting 28 U.S.C. § 2254(d)(1)); 28 U.S.C. § 2254(d)(2) (restricting habeas review to "the evidence presented in the State court proceeding").

In light of the record, the state court's decision was reasonable.  Petitioner cites excerpts of the trial transcript, none of which substantiate his claim that the State knowingly relied on false testimony.  For example, he compares the prosecutor's opening statement that Petitioner "kick[ed] Officer Fernando Rodriguez in the face repeatedly," with Officer Rodriguez's testimony that Petitioner "kick[ed] at me when I was trying to close the door" to the squad car. (Post-conviction Pet. at Pg. ID#: 1414, 1417–18.)  Petitioner further compares an officers' testimony at a motion to suppress evidence hearing that they needed to remove his shoelaces "prior to taking [him] into lockup," with another portion of the State's opening statement, in which the prosecutor states Petitioner bit Officer Rodriguez while in a holding cell.  (*Id.* at Pg. ID#: 1414, 1421.)  "[O]pening statements themselves are not evidence," and thus Petitioner's comparison of Officer Rodriguez's testimony to the State's opening statements—setting aside whether the comparison even reveals inconsistencies in the first place—provides no support for

his contention that the State knowingly relied on perjured testimony from Officer Rodriguez. *Testa v. Village of Mundelein*, 89 F.3d 443, 446 (7th Cir. 1996). Petitioner also claims that Officer Lascola originally testified at trial that Petitioner stated he was not in pain and then later testified that Petitioner did in fact complain of back pain, but his citation to the trial transcript does not support his assertion. (*Id.* at Pg. ID#: 1425–27.) We agree with the state courts that Petitioner failed to provide any support for his claim that any of the officers' trial testimony was false. We therefore find that the state court's decision was reasonable and not contrary to clearly established Federal law, and deny Petitioner's habeas petition on his knowing use of false testimony claim.

### B. Confrontation Right (Claim 2)

Petitioner contends his Sixth Amendment right to confront the witnesses against him was violated when the trial court restricted his cross-examination of Officers Proano and Rodriguez about the civil action Petitioner brought against them. (Dkt. No. 5 at 4–5.) At trial, Petitioner sought to cross-examine both the officers regarding a civil lawsuit he had filed against them for injuries he alleged he sustained during his arrest. *Leslie*, 2013 IL App (1st) 111798–U, ¶¶ 44–45. The trial court prohibited Petitioner entirely from cross-examining Officer Rodriguez about the lawsuit, but permitted limited cross-examination of Officer Proano on the subject because he testified about the lawsuit on direct examination. *Id.* The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. This includes the right to cross-examine witnesses for the purpose of demonstrating bias or motive to testify falsely. *Davis v. Alaska*, 415 U.S. 308, 316, 94 S. Ct. 1105, 1110 (1974). A "criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in

otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness." *Delaware v. Van Arsdall*, 475 U.S. 673, 681, 106 S. Ct. 1431, 1436 (1986) (citing *Davis*, 415 U.S. at 318, 94 S. Ct. at 1111). However, "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S. Ct. 292, 294 (1985) (emphasis in original). Indeed, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination." *Van Arnsdall*, 475 U.S. at 679, 106 S. Ct. at 1435. Judges may limit cross-examination, for example, "for which there is no proper foundation . . . or into matters that are unduly speculative." *Searcy v. Jaimet*, 332 F.3d 1081, 1090 (7th Cir. 2003).

At trial, the court sustained the State's objection when defense counsel questioned Officer Rodriguez about whether he was currently being sued. *Leslie*, 2013 IL App (1st) 111798–U, ¶ 44. The trial court found that "it would be unfair for defendant to sue [the officers] in civil court and then suggest that the civil lawsuit gave them a motive to lie in the criminal case." *Id.* Officer Proano testified on direct examination that Petitioner, after being arrested, said that he would sue the officers. *Id.* ¶ 45. Petitioner was then allowed on cross-examination to "elicit Officer Proano's testimony that [Petitioner] was suing him about what happened on the evening of [Petitioner's] arrest." *Id.* Officer Proano further testified that Petitioner was suing him and Officer Rodriguez for a "payday." *Id.* On re-cross, Officer Proano "testified that he received the lawsuit a couple weeks ago, he did not know any details because he had not spoken to anyone about it, and the question of any injuries sustained by [Petitioner] during the incident was pending further investigation." *Id.* When the defense counsel asked Proano on re-cross if Petitioner was seeking money damages as a result of an injury he suffered

while in the Officers' custody, the trial court sustained the State's objection, finding that the question was repetitive and had already been answered. *Id.* ¶ 46.

Affirming the trial court's limitation of Petitioner's cross-examination, the appellate court first held that "the trial court properly sustained the State's objection to defense counsel's question of Officer Proano because it was repetitive and he had already answered that he did not know any details concerning the damages or injuries alleged in defendant's lawsuit." *Leslie*, 2013 IL App (1st) 111798-U, ¶ 46. The appellate court further affirmed the trial court's refusal to allow Petitioner to question Officer Rodriguez regarding the lawsuit on cross-examination, holding that a reasonable person could "adopt the trial court's view that the evidence of any bias from defendant's lawsuit was too remote or uncertain and did not give rise to an inference that the officers had something to gain or lose by their testimony." *Id.* ¶ 49. In support, the appellate court observed that the "trial testimony of Officers Rodriguez and Proano concerning defendant's conduct was generally consistent with their documentation of his conduct in the police reports or statements to a supervisor," which were made prior to Petitioner being charged or filing a civil lawsuit against the officers. *Id.* The court further observed that "there was no evidence of any prior history between the arresting officers and [Petitioner], . . . Officer Proano testified that he was served with [Petitioner's] lawsuit only a couple weeks prior to his trial testimony, . . . [and] the precluded cross-examination did not involve an IPRA investigation." *Id.* The appellate court therefore held that Petitioner's Sixth Amendment right to confront the witnesses against him was not violated by the trial court's limitation of his cross-examination.

The appellate court's decision that Petitioner's confrontation clause rights were not violated with respect to the limitation of his cross-examination of Officer Proano at trial was not contrary to or an unreasonable application of federal law. The trial judge allowed Petitioner to

cross-examine Officer Proano regarding the nature of the lawsuit, the fact that Petitioner sought money damages in that lawsuit, and the fact that Petitioner's lawsuit was based on his alleged injuries from the police officers. (Trial Tr. (Dkt. No. 19–7) at Pg. ID#: 937–38.) Petitioner was therefore afforded a reasonable opportunity to explore Officer Proano's potential motivation or bias for testifying, as required by the Sixth Amendment. *Van Arsdall*, 475 U.S. at 678–79, 106 S. Ct. at 1435.

We find, however, that the appellate court unreasonably applied Federal law in affirming the trial court's limitation of Petitioner's cross-examination of Officer Rodriguez. Unlike the cross-examination of Officer Proano, Petitioner was completely prohibited from questioning Officer Rodriguez about the pending civil lawsuit. (Trial Tr. (Dkt. No. 16–6) at Pg. ID#: 760, 772–73.) The trial court found it unfair for Petitioner to "sue somebody and then say they have a motive because you sued them." (*Id.* at Pg. ID#: 772.) While trial courts are allowed wide latitude in limiting cross-examination "to take account of such factors as 'harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that [would be] repetitive or only marginally relevant," none of those factors were relied upon in restricting Petitioner's cross-examination. *Olden v. Kentucky*, 488 U.S. 227, 232, 109 S. Ct. 480, 483 (1988) (quoting *Van Arsdall*, 475 U.S. at 679, 106 S. Ct. at 1435). That Officer Rodriguez's testimony was generally consistent with what he had stated in reports prepared before Petitioner filed his civil suit or that Petitioner's cross-examination did not concern IPRA reports does not justify the total restriction imposed by the trial court. Cross-examination regarding a witness's involvement in pending litigation with the party against whom she is testifying, however, appears to be precisely the kind of examination "designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors . . . could

appropriately draw inferences relating to the reliability of the witness. *Van Arsdall*, 475 U.S. at 680, 106 S. Ct. at 1436 (quoting *Davis*. 415 U.S. at 318, 94 S. Ct. at 1111). We find the Illinois Appellate Court unreasonably applied Federal law in affirming the trial court's total prohibition, in violation of Petitioner's Sixth Amendment rights, of inquiry into the possibility that Officer Rodriguez would be biased given the Petitioner's pending civil lawsuit against him. *Id.* at 680, 106 S. Ct. at 1435.

While Petitioner's Sixth Amendment confrontation rights were violated by the total restriction of his cross-examination of Officer Rodriguez concerning Petitioner's pending lawsuit, we find that constitutional error was harmless. *Id.* at 681, 106 S. Ct. at 1436. The state appellate court held, in the alternative, that any error committed by the trial court's limitation of Petitioner's cross-examination was harmless under *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824 (1967). *Leslie*, 2013 IL App (1st) 111798-U, ¶¶ 50–54. As the Illinois Appellate Court observed, factors important to determining whether an error is harmless include: "(1) the importance of the witness's testimony in the prosecution's case, (2) whether the testimony was cumulative, (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, (4) the extent of cross-examination otherwise permitted, and (5) the overall strength of the prosecution's case." *Id.* ¶ 50 (citing *Van Arsdall*, 475 U.S. at 684, 106 S. Ct. at 1483). However, on habeas review, we must determine whether the appellate court's "*harmlessness decision itself* was unreasonable." *Ayala*, 135 S. Ct. at 2199 (emphasis in original). Petitioner thus must establish that the constitutional error here resulted in "actual prejudice*.*" *Id*. at 2197 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S. Ct. 1710, 1722 (1993)). "Under this test, relief is proper only if the federal court has 'grave doubt about whether a trial error of federal law had a substantial and injurious effect or

influence in determining the jury's verdict." *Id.* at 2197–98 (quoting *O'Neal v. McAninch*, 513 U.S. 432, 436, 115 S. Ct. 992, 994–95 (1995)).

As the appellate court observed, Petitioner was able to present the jury with evidence of Officer Rodriguez's potential bias stemming from Petitioner's civil lawsuit during the cross-examination of Officer Proano. *Leslie*, 2013 IL App (1st) 111798-U, ¶¶ 52. Officer Proano testified that he and his "partner" were defendants in Petitioner's lawsuit. (Trial Tr. (Dkt. No. 19–7) at Pg. ID#: 936.) Proano's testimony also made clear to the jury that Officer Rodriguez was his partner. (Trial Tr. (Dkt. No. 19–7) at Pg. ID#: 849, 852, 910.) Thus, because Petitioner was able to cross-examine Officer Proano regarding the lawsuit filed against Officer Proano and his "partner," fair-minded jurists could disagree as to whether "the jury was made aware of [Petitioner's] recent lawsuit against [Officer Rodriguez] . . . for monetary damages arising from [Petitioner's] arrest in the instant case." *Leslie*, 2013 IL App (1st) 111798-U, ¶¶ 52; *Ayala*, 135 S. Ct. at 2199 ("And a state-court decision is not unreasonable if fairminded jurists could disagree on its correctness." (internal quotation marks and citation omitted)). Accordingly, we have no "grave doubt" that the trial court's error had a substantial influence on the jury's verdict, and find the appellate court reasonably held the error was harmless. *Ayala*, 135 S. Ct. at 2197. We therefore deny Petitioner's habeas petition on his confrontation clause claim.

### C. Withholding Exculpatory Evidence (Claim 4)

Petitioner argues that the State withheld evidence from a police camera placed at the intersection where he was arrested and from the cameras at the police station, all in violation of his Fourteenth Amendment due process rights, as set forth in *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963) (Dkt. No. 13 at Pg. ID#: 60–61.) "To establish a *Brady* violation, a

criminal defendant must demonstrate that (1) the prosecution suppressed evidence, (2) the evidence was favorable to the defense, and (3) the evidence was material to an issue at trial." *Badelle v. Correll*, 452 F.3d 648, 655 (7th Cir. 2006). Evidence is material if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have bene different." *Kyles v. Whitley*, 514 U.S. 419, 433–34, 115 S. Ct. 1555, 1565 (1995). "A 'reasonable probability' of a different result is accordingly shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Id.* at 435, 115 S. Ct. at 1566 (quoting *United States v. Bagley*, 473 U.S. 667, 678, 105 S. Ct. 3375, 3381 (1985)).

Petitioner raised his *Brady* in his initial petition for post-conviction relief. (Post-conviction Pet. at Pg. ID#: 1406.) The trial court first found that Petitioner failed to provide any evidence that "the State withheld the blue light camera footage," citing the officers' uncontroverted trial testimony that "the blue light camera did not capture petitioner's altercation with the officers and that the camera's at the 6th District station were not working." (*Id.* at Pg. ID#: 1435.) On appeal, Petitioner argued that the State violated *Brady* by failing to support the officers' trial testimony regarding the unavailability of video evidence with any affidavits. (Direct Appeal Order at Pg. ID#: 359–60.) The appellate court summarily affirmed the trial court's dismissal of Petitioner's *Brady* claim. (*Id.* at Pg. ID#: 359–60.)

"Evidence is suppressed for *Brady* purposes only if (1) the prosecution failed to disclose evidence that it or law enforcement was aware of before it was too late for the defendant to make use of the evidence, and (2) the evidence was not otherwise available to the defendant through the exercise of reasonable diligence." *Boss v. Pierce*, 263 F.3d 734, 740 (7th Cir. 2001). A prosecutor also has "a duty to learn of any favorable evidence known to others acting on the

government's behalf in the case, including the police." *Kyles*, 514 U.S. at 437, 115 S. Ct. at 1567. Petitioner has failed to provide any evidence that the State knew of video evidence from any camera that it did not disclose. As he did on appeal, Petitioner points to the officers' trial testimony to show that the state suppressed exculpatory evidence. However, Officer Rodriguez testified at trial that he did not investigate whether there was video evidence of the events leading up to Petitioner's arrest, as that is normally done by detectives, and that he believed the video cameras in the police station were not working when Petitioner was arrested. (Trial Tr. (Dkt. No. 19–6) at Pg. ID#: 759, 765–67.) Officer Proano testified that he did not know if the camera's in the police station were working when Plaintiff was arrested. (*Id.* at Pg. ID#: 862.) Officer Willis testified that the cameras in the police station were not working when Petitioner was arrested. (*Id.* at Pg. ID#: 794.) We agree with the state courts that this evidence is insufficient to show the State suppressed any exculpatory evidence. We therefore find that the state court's decision was reasonable and not contrary to clearly established Federal law, and deny Petitioner's habeas petition on his *Brady* claim.

## III.     Certificate of Appealability

In the event that Petitioner intends to appeal his decision, we decline to issue a certificate of appealability ("COA"). Pursuant to 28 U.S.C. § 2253(c)(1), a certificate of appealability ("COA") is required for an appeal from a final order in a habeas corpus proceeding under 28 U.S.C. § 2254. We may grant a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Walker v. O'Brien*, 216 F.3d 626, 631–32 (7th Cir. 2000). To show that his constitutional rights have been denied, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessments of the constitutional claims debatable or wrong," or that "the issue presented were

'adequate to deserve encouragement to proceed further.'"  *Slack v. McDaniel*, 529 U.S. 473, 484,

120 S. Ct. 1595, 1603–04 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893,

103 S. Ct. 3383, 3395 (1983)).  For claims dismissed on procedural grounds, a district court

should issue a COA only "when the prisoner shows, at least, that jurists of reason would find it

debatable whether the petition states a valid claim of the denial of a constitutional right and that

jurists of reason would find it debatable whether the district court was correct in its procedural

ruling."  *Slack*, 529 U.S. at 484, 120 S. Ct. at 1604.

Here, reasonable jurists could not debate our conclusion with respect to Petitioner's

claims premised on the State's alleged use of false evidence and improper closing argument,

ineffective assistance of counsel, and, in part, *Brady*, which we have dismissed due to procedural

default.  Petitioner did not properly present these claims to the state court, and we have no basis

to excuse his default.  To reach the merits of these defaulted claims would undermine the

procedural protection in place for ensuring a federal court's deference to state court proceedings.

*Murray v. Carrier*, 477 U.S. 478, 489, 106 S. Ct. 2639, 2646 (1986).

Additionally, no reasonable jurist could disagree with our analysis on the merits of

Petitioner's claims.  As discussed above, Petitioner failed to provide any evidence in support of

his claims that the State relied on knowingly false testimony to secure his conviction, or that the

State suppressed any exculpatory evidence.  Moreover, while the trial court unreasonably applied

Federal law when it restricted Petitioner's cross-examination of Officer Rodriguez, the state

appellate court reasonable found that error to be harmless.  Accordingly, Petitioner has not made

a substantial showing of the denial of a constitutional right, as necessary for us to issue a COA.

*Slack*, 529 U.S. at 484, 120 S. Ct. at 1604.

**CONCLUSION**

For the reasons state above, we deny Petitioner's habeas petition.  We also decline to issue a certificate of appealability.  It is so ordered.

_____
Marvin E. Aspen
United States District Judge

Dated: May 22, 2017
        Chicago, Illinois